UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RODERICK CRUMEDY | CIVIL ACTION |
| VERSUS | NO. 2:22-cv-4570-EEF-DPC |
| XYZ INSURANCE COMPANY<br>NELSON'S TREE SERVICE LLC &<br>DARRELL NELSON | |

## ORDER & REASONS

Before the Court is a Motion for Summary Judgment by Secura Insurance Company ("Secura") urging the Court to dismiss Plaintiff Roderick J. Crumedy's ("Plaintiff" or "Crumedy") claim against it on the basis that its two insurance policies do not cover the injury underlying the suit. After reviewing the parties' briefing, the record, and applicable law, the Court now rules as follows.

**I.    BACKGROUND**

This case arises out of alleged personal injury to Plaintiff Roderick J. Crumedy by Defendant Darrel L. Nelson ("Nelson"), employed by Defendant Nelson's Tree Service ("Nelson's Tree Service"), who was operating a debris removal truck at the time of the incident. R. Doc. 1 at 2-3. Around November 18, 2021, Crumedy was working as a debris monitor clearing hurricane debris in Covington, LA while Nelson operated a tree removal truck[1] for Nelson's Tree Service. R. Doc. 1 at 2-3. At the time Nelson finished loading the truck, Crumedy says he began to print the ticket to allow Nelson to leave with the load. *Id.* Allegedly, the bar codes Crumedy needed to

---

[1]. Crumedy refers to the vehicle as an "HX International truck with affixed Rotobec Elite 910 Loader." R. Doc. 70 at 1. Secura refers to it as a "2018 International HX 620 truck with the Rotobec Elite 910 Loader affixed to it." R. Doc. 75 at 1.

scan were "improperly located" on the truck near "where the steel legs descend to stabilize the truck," so when Crumedy went to scan the truck, a steel leg fell and crushed his right foot. *Id.* Crumedy alleges that Nelson lowered the steel legs "without first making sure it was safe for him to do so" and alleges negligence and respondeat superior. *Id.* at 3-4. Crumedy sued Progressive Casualty Insurance ("Progressive") as the automobile insurer for the truck and then Secura Insurance Company as an insurer for Nelson's Tree Service. *Id.* at 1-3; R. Doc. 42 (adding Secura as a party upon discovery of coverage). United Wisconsin Insurance Company ("United Wisconsin") intervened as the workman's compensation insurer for Crumedy's employer. R. Doc. 25.[2]

Crumedy sued Defendants in federal court asserting diversity jurisdiction,[3] seeking damages including, but not limited to: (1) property damage; (2) hospital, medical and drug expenses, past and future; (3) physical and mental pain and suffering, past and future; (4) impairment of earning capacity/lost wages; (5) loss of enjoyment of life; (6) permanent disability; and (7) other potential damages. R. Doc. 1 at 5. Defendants generally deny Crumedy's allegations and assert a number of affirmative defenses, including: (1) that the accident was caused by the negligence of third parties over whom Defendants had no responsibility, legal or otherwise; (2) comparative fault by Crumedy; and (3) failure to mitigate damages. R. Doc. 14. at 2-3.

## II.  PRESENT MOTION

Secura filed a motion for summary judgment urging that Crumedy's claims against it be dismissed because the policies it provides to Nelson's Tree Service do not cover the claims

---

[2]. For convenience, the Court will refer to Nelson, Nelson's Tree Service, Progressive, Secura, and United Wisconsin collectively as "Defendants."
[3]. Crumedy is a citizen of Louisiana, Nelson is a citizen of Missouri, and Nelson's Tree Service is a corporation with its principal place of business in Missouri. R. Doc. 1 at 1-2. United Wisconsin is a Wisconsin company. R. Doc. 25. Progressive and Secura are both alleged to be foreign insurers as well. R. Docs. 29, 42.

Crumedy asserts in this litigation. R. Doc. 67. Secura had two policies covering Nelson's Tree Service at the time of the incident: a commercial protection policy and a commercial umbrella policy. R. Doc. 67-4 at 2. Secura argues that neither policy cover the injuries underlying this litigation because the commercial protection policy, or CGL (Commercial General Liability), excludes "[b]odily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." *Id.* at 4 (quoting CGL Exclusions, R. Doc. 67-8 at 3). Secura notes that "auto" is defined as "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads… or [a]ny other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged." *Id.* (quoting CGL Definitions, R. Doc. 67-8 at 11). Therefore, Secura argues, the CGL does not cover the incident underlying this litigation.

As to the umbrella policy, Secura argues that it excludes coverage for bodily injury that arises out of the use of an automobile that is not a "covered auto," which is defined to be "one to which 'underlying insurance' applies." *Id.* at 4-5 (quoting the Umbrella Policy Definitions, R. Doc. 67-10 at 21). "Underlying insurance" is defined as the "policies of insurance listed in the Declarations under the Schedule of 'underlying insurance.'" Umbrella Policy Definitions, R. Doc. 67-10 at 24. Secura states that the only two insurance policies listed in that schedule are the CGL policy and an employer's liability policy, "neither of which provided underlying auto coverage for the vehicle involved in the accident." R. Doc. 67-4 at 5; *see* Schedule of Underlying Insurance, R. Doc. 67-10 at 3. Therefore, Secura argues that the Umbrella Policy does not apply to the injuries underlying this litigation.

Crumedy filed a response in opposition arguing that the CGL policy contains an exception to the auto exclusion for "mobile equipment" and that the truck at issue qualifies as mobile equipment. R. Doc. 70. Crumedy emphasizes that the definition of the "mobile equipment" in the CGL policy includes "Vehicles, whether self-propelled or not, maintained *primarily* to provide mobility to permanently mounted: (1) Power cranes, shovels, *loaders*, diggers or drills; . . . ." *Id.* at 3 (quoting Policy Definition, R. Doc. 67-8 at 13) (emphasis added). He argues that that the policy expressly contemplates loaders, which is undefined in the policy, and that this provision is not limited to vehicles whose purpose is "solely" to provide mobility but rather uses the term "primarily." *Id.*

Crumedy also distinguishes the case law Secura cites, noting that many of the Louisiana cases address negligent hiring/supervision, which he claims is not an issue in this case, and only one case addresses a mobile equipment exception, but that policy contained language which required the vehicle's "sole purpose" be to provide mobility to the equipment. *Id.* at 11-12. Since the policy in this case contains language that requires the vehicle's provision of mobility be merely the primary purpose, Crumedy finds this case law inapplicable. *Id.* Crumedy similarly distinguishes the Missouri case law Secura cites. *Id.* at 12-13. Instead, Crumedy offers *Doty v. Safeco Insurance Co.*, 400 So. 2d 718 (La. App. 3 Cir. 1981) as an appropriate analogue. *Id.* at 13 (describing how in *Doty*, the court found a truck with welding equipment permanently attached to it to be mobile equipment and thus fall within the exception). Crumedy argues that Nelson himself admitted in his deposition that he acquired the truck with the loader attached and has never removed it in his ownership of the vehicle, which Crumedy analogizes to *Doty*. *Id.* at 9. Crumedy lastly refutes the denial of Umbrella coverage, as that coverage hinges upon the CGL coverage. *Id.* at 13-14.

4

Secura in reply argues that it is undisputed the truck qualifies as an "auto" and therefore the only question is the applicability of the exception, which it maintains Crumedy cannot establish. R. Doc. 75 at 1-2. Secura claims that the primary purpose of the truck was not to provide mobility to the loader but rather "to haul storm debris and the loader was just a tool attached to the truck to complete that mission." *Id.* at 5. Secura also distinguishes *Doty* on this basis, arguing that "the truck in this matter was not maintained for either the sole purpose or primary purpose of moving the loader." *Id.* at 6.

## III. APPLICABLE LAW

### a. Summary Judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c*); Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

### b. Insurance Contract Interpretation

Secura briefed insurance contract interpretation under both Louisiana and Missouri law, as the policies were issued in Missouri but the accident occurred in Louisiana. Crumedy also

5

presented case law from both states. The Court will provide a brief overview of both frameworks but observes that in this instance, it appears the outcome would be the same regardless of which state's contract laws apply.

Louisiana law applies the general rules of contract interpretation to construe insurance policies. *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 269 (5th Cir. 1990). "The parties' intent, as reflected by the words of the policy, determine the extent of coverage." *Reynolds v. Select Properties, Ltd.*, 634 So.2d 1180, 1183 (La. 1994). "Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Id.* Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. *Ledbetter v. Concord Gen. Corp.*, 665 So.2d 1166, 1169 (La. 1996).

Courts interpreting liability policies should interpret such policies "to effect, rather than to deny coverage" but "it is well-settled that unless a statute or public policy dictates otherwise, the insurers may limit liability and impose such reasonable conditions or limitations upon their insureds." *Supreme Services & Specialty Co., Inc. v. Sonny Greer, Inc.*, 958 So. 2d. 634, 638-39 (La. 2007). Policy language that is "susceptible to two or more reasonable interpretations" is considered ambiguous and such language "must be liberally interpreted in favor of coverage." *Id.* When exclusionary provisions are unambiguous, however, they "must be given effect." *Id.* at 639. Louisiana courts are reluctant to grant summary judgment denying coverage "unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded." *Cosey ex rel. Hilliard v. Flight Academy of New Orleans*, 364 So. 3d 226, 231 (La. App. 4 Cir. 2020), *writ denied*, 302

So. 3d 536 (La. 2020) (quoting *Reynolds v. Select Properties, Ltd.*, 634 So. 2d 1180, 1182-83 (La. 1994)).

Courts in Louisiana have interpreted "aircraft, auto, and watercraft" exclusions in commercial general liability policies as unambiguous and denied coverage for automobile-related injuries under the exclusion. For example, in *Vise v. Olivier House Property Mgmt., LLC*, a Louisiana court of appeals found the exclusionary policy "clear and unambiguous" and found it to bar coverage for automobile-related damages. 216 So. 3d 157, 162 (La. App. 4 Cir. 2017). The insurance provision in that case excluded coverage for bodily injury resulting from "use or entrustment to others of any aircraft, 'auto' or watercraft," but was subject to a parking exception. *Id.* at 159. The appellate court affirmed the trial court's grant of summary judgment to the insurer, finding the policy to clearly exclude "damages arising out of the use of an auto" and that the parking exception in that policy did not apply to the facts of the case. *Id.* at 162.

In *Williams v. Galliano*, the court addressed the mobile equipment exception to an auto exclusion, affirming summary judgment to the insurer after finding that the garbage truck at issue was an "automobile" and did not qualify as "mobile equipment" under the policy. 601 So. 2d 769, 770 (La. App. 1 Cir. 1992). In that case, the plaintiff Williams was at a landfill unloading his garbage truck and while outside of his truck, "a twenty-ton Mack truck reversed toward him to dump its load." *Id.* He died from his injuries, which he sustained "when he was pinned between the two trucks." *Id.* The relevant language in that policy's exception defined mobile equipment as a land vehicle, self-propelled or not, that is "designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills." *Id.* at 771. The court expounds in great depth on the Louisiana jurisprudence of the mobile equipment exception,

7

observing that courts distinguish between injuries received by an automobile in "its transportation or locomotion role" versus when the "truck mounted equipment was being used at the time of the accident." *Id.* at 772-73. In that case, Williams was injured by the truck in its transportation/locomotion role, but the court noted that the jurisprudence recognizing this distinction still recognizes coverage if the *mobile equipment* is "engaged in a transportation function" at the time of the accident. *Id.* at 773.

In *Williams*, the court conducted a two-step inquiry, asking first whether the "sole purpose" of the truck was to provide mobility to the equipment, a winch and boom, and second, whether the winch and boom "can be considered equipment of the same type as power cranes, shovels, loaders, diggers and drills." *Id.* Ultimately the court found that the truck's "primary purpose was to transport the garbage even though, technically, it could be said that the truck also provided mobility to the winch and boom." *Id.* at 774. The court thus held that the truck was not mobile equipment.

The case to which Crumedy points, *Doty v. Safeco Insurance Co.*, further illuminates the mobile equipment exception, the "sole purpose" language, and how courts interpret the policy alongside the facts of the underlying litigation. 400 So. 2d 718 (La. App. 3 Cir. 1981). In *Doty*, the court affirmed coverage under a CGL policy under the mobile equipment exception to the auto exclusion, even though the accident occurred when the truck was driving on a highway and was in personal use. *Id.* at 722-23. The vehicle in *Doty* was a pickup truck with a permanently affixed welding rig in its bed. *Id.* at 721-22. The exception defined mobile equipment as a land vehicle, self-propelled or not, which is "(4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills." *Id.* at 722. Observing that other subsections of the mobile equipment definition stated "maintained *for use*" and "designed *for use*,"

8

the court found that the words "designed or maintained" without the word "use" was an intentional choice by the insurer and the fact that the truck was in operation as a personal vehicle at the time of the accident did not preclude coverage. *Id.* at 722-23. The court found it significant that the owner of the truck, who was a welder, performed his business by bringing his equipment to worksites that did not have welding equipment itself. *Id.* at 721 ("the evidence further establishes that all of the welding work is done on site, with the result that the welding equipment to be used must be transported to each job site."). This informed the court's analysis of whether this truck was "maintained or designed" for providing mobility to the welding equipment. Because the court found that the truck was "maintained by the owner for the sole purpose (not use) of affording mobility to welding equipment," the court affirmed coverage. *Id.* at 723 (internal quotations omitted).

In Missouri, courts apply the same approach to contract interpretation. Unambiguous provisions are enforced while ambiguous provisions are construed against the insurer and in favor of coverage. *American States Insurance Co. v. Broeckelman*, 957 S.W.2d 461, 465 (Mo. Ct. App. 1997). The burden of showing an exclusion is on the insurer and exceptions are construed strictly against the insurance company. *Standard Artificial Limb, Inc. v. Allianz Insurance Co.*, 895 S.W.2d 205, 209 (Mo. Ct. App. 1995). Missouri courts also similarly interpret the auto exclusion in CGL policies and may deny coverage for automobile-related claims that do not satisfy and exception. *See Broeckelman*, 957 S.W.2d at 463-64 (discussing the automobile exclusion and the mobile equipment exception).

**IV.   DISCUSSION**

The Court applies Louisiana law to the instant case because the injury occurred in Louisiana while the Defendants were operating in Louisiana, but in any event, the governing law

in either state would yield the same result the Court reaches here. The Court begins with Louisiana Supreme Court's guidance that summary judgment denying coverage is not appropriate "unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded." *Cosey ex rel. Hilliard*, 364 So. 3d at 231. There is no dispute that the debris removal truck was an automobile and thus subject to the automobile exclusion under the policy. The Court finds that Secura has adequately carried its burden in showing the applicability of this exception. The issue therefore is whether Crumedy has successfully identified a dispute of material fact as to the applicability of the mobile equipment exception to that exclusion. For the following reasons, the Court will deny summary judgment and finds as a matter of law that the truck in this case constitutes mobile equipment under Secura's CGL policy.

First, the Court observes that the definition of mobile equipment in the policy includes a "loader." This indicates that the parties consider such equipment to categorically fall within the mobile equipment exception. Unlike in *Williams* where the court had to analyze whether the winch and boom were like the enumerated mobile equipment examples in the policy, here the loader is expressly contemplated to fall within this provision. No analogizing is necessary and upon first glance, the loader constitutes mobile equipment.

Second, unlike both *Doty* and *Williams*, the Secura policy requires that the equipment be "maintained *primarily* to provide mobility to permanently mounted . . . loaders," not that the vehicle's "sole purpose" be such mobility. This language is clearly less restrictive and leaves room for more than one reasonable interpretation. Crumedy cites to Nelson's deposition where Nelson stated that the entire time he's owned this truck this loader has been affixed, and Secura does not dispute the permanence of the loader. While there is a colorable argument that, like in *Williams*,

10

the primary purpose of this truck is to haul debris and this tool technically aids in that effort, the *Williams* court was grappling with the stricter "sole purpose" language. *See Williams*, 601 So. 2d at 774 (finding that the "primary purpose [of the truck] was to transport the garbage even though, technically, it could be said that the truck also provided mobility to the winch and boom"). Here, there is another reasonable interpretation of the mobile equipment exception that favors coverage, especially when considered in conjunction with the express inclusion of "loader" in the definition of mobile equipment itself.

      Third, there is a line of case law in Louisiana distinguishing between injuries that are incurred by the vehicle itself versus by the equipment itself, though the Court acknowledges that this distinction is not always determinative of coverage under the auto exclusion and the mobile equipment exception. *See id.* at 771-73 (first discussing *Lucas v. Deville*, 385 So. 2d 804 (La. App. 3 Cir. 1979) and *Russo v. Veran, Inc.*, 488 So. 2d 372 (La. App. 3 Cir. 1986) to provide examples of when a vehicle "had departed from its transportation or locomotion role" and was instead more like a mobile crane or lifting device, and thus found coverage; then discussing *Doty* to demonstrate that coverage may still exist even if the truck is being used as a vehicle as long as it constitutes mobile equipment). In any event, the metal stabilizer that injured Crumedy can be reasonably considered part of the equipment itself. Indeed, it is hard to imagine that the truck with the loader equipment, but operating in its "transportation or locomotive role," would deploy the stabilizer's steel leg, as the leg's function is to stabilize the truck in its debris removal function while the truck is stationary. As the Court finds Crumedy was injured by the equipment itself, there is no need to evaluate whether the truck was in motion or not and this jurisprudential distinction is less significant on the facts of this case.

The Court is satisfied that the truck's primary purpose was to grant mobility to the debris removal equipment. Like the welding rig in the truck in *Doty*, this Rotobec Elite 910 Loader was a tool that had to be brought from site to site in order for the truck to perform its function of hauling debris. The Court cannot find a reasonable interpretation of the "primarily" language in the mobile equipment exception that severs the debris hauling from the equipment used to do just that. To find otherwise would be as if the *Doty* court considered the purpose of the welding rig to perform welding work, but not to transport the welding equipment necessary to do that task.

Because the parties' briefing as to the Umbrella policy is secondary to the question of coverage under the CGL policy, the Court does not determine as a matter of law that the Umbrella policy applies. The Court concludes only that under the CGL policy, the truck and loader constitute mobile equipment. Accordingly, for the foregoing reasons, the Court DENIES Secura's motion for summary judgment and finds as a matter of law that the HX International truck with the Rotobec Elite 910 Loader constitutes mobile equipment under the CGL policy.

New Orleans, Louisiana, this 8th day of November, 2023.

_____
United States District Judge